13122

CLARY v. BLACKWELL *ET AL.*

(158 S. E., 223)

March, 1930.

*Mr. T. K. Vassy,* for appellants,

*Mr. W. S. Hall,* for respondent,

April 16, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, P. L. Clary, against the defendants, George Blackwell and J. C. Jenkins, commenced in

the Court of Common Pleas for Cherokee County, August, 1924, is a suit for damages growing out of an automobile collision. Issues being joined, the case was first tried at the November, 1925, term of said Court before Special Judge, Hon. S. T. Lanham, and a jury, resulting in a verdict for the plaintiff against the defendant Jenkins in the sum of $2,000.00. Upon motion of the plaintiff, his Honor, Judge Lanham, granted a new trial, upon the ground that error was made in the trial of the case in refusing to admit in evidence certain testimony offered by the plaintiff. The case was again tried at the March, 1930, term of said Court before his Honor, Judge T. J. Mauldin, and a jury, resulting in a verdict for the plaintiff against both defendants in the sum of $900.00. Motion for a new trial, made on behalf of the defendants, being refused, from entry of judgment on the verdict the defendants have appealed to this Court.

The appellants present a number of exceptions to the Court, but we shall consider only the exceptions which impute error to the trial Judge in permitting the witness G. W. Speer, in response to the examination by plaintiff's counsel, to testify concerning a conversation had with the defendants.

The witness G. W. Speer is an attorney, engaged in the practice of his profession in the said county, and it is the contention of appellants that the conversation in question, which Mr. Speer testified he had with the appellants, was a communication between attorney and client, and therefore privileged. Just before the testimony in question was given, the following occurred before the Court:

"G. W. Speer, witness for the plaintiff, being duly sworn, testified as follows:

"DIRECT EXAMINATION BY MR. HALL

"Mr. Vassy: If your Honor pleases, it is a question raised in this case, it was tried before and it is raised at this time; we would like to ask your Honor to exclude the jury until we settle a matter in connection with this testimony.

"The Court: Does the determination of his testimony involve any consideration of a question of evidence?

"Mr. Hall: I think the point he is after, your .Honor, is that he claims the conversation of Mr. Speer was as a confidential agent.

"The Court: Go to your room, gentlemen. Jury retires.

"The Court: This testimony of Mr. Speer is of a confidential character?

"Mr. Vassy: Yes, sir; I make the objection between attorney and clients. At least between prospective attorney and clients.

"The Court: Let me understand you, Mr. Speer, what is your attitude to it?

"Witness: They consulted me about the case, your Honor, and it was a conversation.

"The Court: What was the relationship between you and the plaintiff in this case?

"Witness: Nothing. The defendants came to me about this case after it was begun.

"The Court: The defendant?

"Witness: Yes, sir; and we discussed it a little bit and I wasn't employed to represent them, and so later I just asked Mr. Hall who represented them; that is how it got out.

"The Court: Well, did they approach you with a view of employing you?

"Witness: Yes, I suppose they did, they came to me about the lawsuit.

"The Court: You never had been a party?

"Witness: No, sir; never had been.

"Mr. Hall: The question before was whether he had been talked to or consulted as an attorney. The Circuit Judge first ruled (referring to the first trial of the case), the testimony was competent, on a motion for a new trial, and there was an appeal from that order, and the appeal was abandoned so that the order becomes the law of the case.

"The Court: What did he hold in his order?

"Mr. Hall: The motion was made for a new trial on the ground of excluding the testimony of Mr. Speer. He did exclude the testimony and on motion for a new trial he reversed his ruling.

"The Court: He virtually held then that Mr. Speer's testimony would have been competent?

"Mr. Hall: The order on the new trial makēs it competent.

"The Court: I understand he held at the time of the trial Mr. Speer's testimony was incompetent, and the case went to a verdict, and upon reconsideration he gave a new trial on the ground he erred in holding Mr. Speer's testimony was incompetent?

"Mr. Hall: Yes, sir; and they appealed.

"The Court: And they appealed from that and your position is the order is part of the law in the case, or the effect of it. It is the legal effect of his action conclusive so far as Mr. Speer's testimony is competent?

"Mr. Hall: Yes, sir.

"The Court: Well, he granted a new trial and the matter will come right back here anyway that a new trial was granted. Didn't he grant a new trial?

"Mr. Butler: Yes, sir. Here is his order, I will not read the whole order. On cross examination of George Blackwell he was asked if he ever employed G. W. Speer to represent him in this case (reads order).

"The Court: Well, that brings us back to a trial *de novo,* and I am going to put this matter up to Mr. Speer, he is a lawyer and knows what it takes to constitute a privileged communication. What were the communications or negotiations you had here, were they of such a character as would preclude you as a lawyer to give expressions to it as a lawyer thereafter? In other words, do you hold it as privileged communication?

"Witness: Your Honor, I was asked that question on the witness stand before, whether I was employed, and I stated

the entire conversation between them, and now I don't consider I am employed unless I am paid something, because people come and talk often to me.

"The Court: Now, Mr. Speer, would your deliverance of the testimony of which you have knowledge be in violation of the ethics of the legal profession?

"Witness: I don't know whether it would or not, it might not be expedient for me to tell what was done.

"The Court: Is the situation such as you would avail yourself of any privilege you have as a lawyer?

"Witness: I can testify to this much, I don't think it was such as would preclude me assisting in the other side in the lawsuit, because when the parties left my office they didn't tell me they wanted me to represent them; we discussed the case and they got up and left.

"The Court: Well, that being the situation, you are the man to be protected here as much as the other side; if you raise no objection on your part I am going to let you testify. Bring the jury.

"Mr. Vassy: Your Honor, please, before we go into this privileged communication, the right inures to a client to the same extent as it does an attorney.

"The Court: I understand that.

"Mr. Vassy: If the Court please, let us go into the matter.

"The Court: All right.

"EXAMINATION BY MR. VASSY

"Q. Mr. Speer, Mr. Blackwell and Jenkins both came to see you and talked with you in your office? A. Yes, sir.

"Q. And you had gone into some of the details of the case with them? A. Yes, sir.

"Q. And explained to them what the law of the case was in reference to attachments, I believe? A. Yes, sir.

"Q. And they had the process that had been served on them in the Magistrate's Court the first time they came in? A. Yes, sir.

"Q. Did they see you twice? A. Yes, sir.

"Q. Then the next time they came to see you, they had the process that had been served in this suit (the suit now involved), we are now trying? A. I think they did.

"Q. And at that time you discussed with them the case right considerably, and went into it with them? A. Yes, sir.

"Q. And I believe that they finally asked you what your fee would be? A. Yes, sir.

"Q. And you all didn't get together and agree on a fee? A. That is right.

"Q. And that is the cause of the breaking off? A. Yes, sir.

"Q. And now, Mr. Speer, if you all had agreed on what your charge would be, is it your opinion from what had taken place up to that time you would have been employed? A. Oh, yes, sir.

"Q. That is the situation if the Court pleases.

"Mr. Speer made a further statement regarding the matter which need not be restated here, for the reason that we think the above sufficient to show the relation of Mr. Speer to the defendants, and upon this Mr. Vassy, as attorney for the defendants, objected to the following testimony:

"DIRECT EXAMINATION BY MR. HALL,

"Q. Mr. Speer, you remember about the time P. L. Clary suffered this injury? A. Yes, sir.

"Q. Did you have any conversation with Mr. George Blackwell here, and J. C. Jenkins, his son-in-law, about this? A. Yes, sir.

"Q. Just detail now the conversation that they had with you? A. Mr. Vassy: Now your Honor, please, I don't know whether my objection just now was sufficient to take care of it.

"The Court: Note objection, go ahead. You object to the question?

"Mr. Vassy: I object to it on the ground it was a communication between attorney and client, or a prospective client.

"The Court: Note the objection.

"A. They came in my office one day with attachment papers issued by Magistrate Bell for one hundred dollars.

"Q. Against whom? A. Against, I think, Mr. Blackwell and Jenkins, and an automobile. I think it was a Mitchell automobile. I don't remember the make of the car. Mr. Blackwell said the man got his leg broken, and I said 'Well, if you can get out for one hundred dollars you better pay it'; and I just told him to go and see the man and see if he could get any knocked off, and if he couldn't pay the one hundred dollars; and they got up and left and carried the papers with them; a few days after that, I don't remember the exact time, they came back with a suit against them, I think, for ten thousand dollars with papers in this suit; and got to talking again about it and I told Mr. Blackwell what I would charge to represent them in the lawsuit, and he didn't like my fee at all, and stated when he got on the witness stand and swore that was his automobile why then they would turn it loose; and then I told him under the law that the attachment against the automobile would fasten the automobile, it wouldn't make any difference whose automobile it was; and they got up and left and took the papers with them.

"Q. He was advising you rather than you advising him as to what happened when he got on the stand? A. Well, that is what he said about it.

"Q. He didn't ask you to represent them? A. Asked me what I would charge.

"Q. Didn't he say he wanted you to represent them? A. No, he left when I told him; Jenkins, he said very little, if anything. I don't remember anything he said; Blackwell did most of the talking."

In our opinion, the trial Judge erred in allowing this testimony and that the same was prejudicial. The ownership of the automobile in question was a material issue in the case, and, further, the remarks by Mr. Speer as to the advice to settle very likely influenced the jury. Communications between client and attorney, or prospective attorney and client, should be protected. When a person goes into the office of an attorney to consult him regarding a matter, necessarily the matter involved must be discussed to some extent before the attorney can be in a position to give advice, or to set a fee for the work the party wishes done. That, it seems, is what took place in the case at bar. In our opinion the conversation, or communication, Mr. Speer had with the defendants was privileged, and the testimony in question should not have been admitted.

We are unable to agree with counsel for respondent in the position that the ruling made by Judge Lanham in the former trial of the case was binding on Judge Mauldin. As held by Judge Mauldin, the new trial granted by Judge Lanham meant a new trial *de novo*. Judge Mauldin admitted the testimony on the ground that Mr. Speer did not ask to be protected regarding the matter. In the order issued by Judge Mauldin refusing the motion of the defendants for a new trial, his Honor seems to have taken a different view of the question and held that the same was *res judicata* by reason of the order of Judge Lanham granting the new trial. In our opinion the order of Judge Lanham granting a new trial in the case gave to the parties, plaintiff and defendants, a new trial *de novo,* and defendants were not precluded from objecting to the testimony in question on the last trial.

The judgment of the lower Court is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and STABLER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.